Good morning, honors. May it please the court, my name is Justin Sierra, District Attorney of San Diego. I represent Mr. Acosta-Sierra in this matter. Mr. Acosta asserts that no fewer than four errors were committed by the trial court in his case. First, the district court erred when it held that the government did not have to prove beyond a reasonable doubt that the officer... I'm sorry. Sorry to say it's not just me having a day. Do you want a moment, your honor? It's okay. The district court erred when it held that the government didn't have to prove beyond a reasonable doubt actual fear on the part of the federal officer for a conviction of 111. It then compounded that error when it held in the alternative that the government had proven such an element regardless, yet cited no evidence of actual fear by the officer, and then created a variance when it went beyond conduct the government had originally identified as giving rise to the assault. The second error occurred when it denied the Rule 29 motion, given the fact that the officer himself testified he wasn't fearful of immediate bodily harm, and the court made no finding that he testified unreasonably. That should have ended the inquiry. The third error is that the court wrongly maintained that 111 remained the general intent crime, despite this court's recent holding in Chapman, which undermined Jim. And then finally, the district court erred when it precluded Mr. Koster from using evidence of his mental health to demonstrate why he reasonably believed force was necessary to defend himself on count three of the second superseding indictment. Let me just ask right off, assuming that we analyze the case under the first prong of common law assault, wouldn't that still be a general intent crime under United States v. Jim? It would not. And I'll start with my third issue to address Your Honor's question. In United States v. Jim, this court conducted a hybrid style analysis of the 111 statute. It's hybrid in the sense that it took an elemental style approach to determine the intent required, and it looked at the words in the statute and the elements, which included the term willful. Well, willful, I found Jim so confusing, so maybe you'll enlighten me. I mean, Jim, you found the word willful in our prior case law, but the essential source of it was common law definition of assault and the two different prongs of assault. And then it went on to say, well, willful doesn't really mean willful in this context because this is a general intent crime. But it did seem to say that as to willful in both prongs of the common law definition. So why doesn't that determination bind us? Well, I think Jim held in the elemental style analysis that willful meant specific intent, and Jim specifically adopted the common law definition of assault, either an attempted battery or an intentional display of force that when coupled with a present apparent ability created apprehension of harm. When it looked at the term willful, it looked at it and said, look, this is deliberate, intentional in nature. It's not just a knowing offense. And so I think it relied on the traditional use of the term willful in other statutes, which this Court and other courts have held required a finding of specific intent. What it did, though, is it went beyond just the elemental style approach, and the second part of the hybrid analysis had it dealing with congressional purpose. And here is where Jim held that 111 criminalized not just an assault, as we know it, but it also criminalized these other four things identified in the statute, which included things like resisting arrest, and it said, look, there's more than just an intent of Congress here to criminalize assaults. They wanted to criminalize four other types of conduct. Now that, it said, coupled with FIOLA, which required heightened standards of protection for federal officers, the Court said that coupling that purpose with a general intent was a good thing to do Now the problem is, Jim was a 1982 case, I'm sorry, a 1989 case, I believe. Now we're talking 20-plus years later, this Court revisits 111 in Chapman, which it held was very unartfully drafted by Congress, a very confusing statute. And what Chapman held was that the inclusion of the term simple assault was actually intended to represent the term assault. And what Chapman held was, look, Congress intended 111 to criminalize assaults. So if you have something like resisting arrest, it has to include an assault in order for criminal liability to attach under 111. So what the Court in Chapman found was that Congress intended precisely the opposite of what the Court in Jim said it intended by enacting 111. Chapman held you can't violate 111 without an assault. Jim said the opposite. Why don't I just ask you about Chapman? Sure. It seems to me that nothing in Chapman actually interferes with protecting federal officers or federal functions, does it? It doesn't interfere with it at all. It just makes clear that 111 required proof of an assault in addition to any of the other criminal acts identified at 111, such as resisting arrest. But I'm not sure why Chapman would require us to or would overrule or is inconsistent with Jim's view about what Congress intended at the time, which Jim described as intending to prevent interference with federal functions, not just assault on federal officers. And based on that, that it was a general intent crime. I mean, that was what we determined Congress meant when it was enacted, even if for other reasons we said in Chapman, no, it's limited to there has to be evidence of assault. Right. The problem is that if you take a look at Jim and we take out the congressional purpose analysis, what's left in Jim? The only thing that's left in Jim is this Court's acknowledgement that inclusion of the term willful at 111 identified a specific intent element and required proof beyond a reasonable doubt of specific intent. What Chapman has now done is created an irreconcilable conflict between these two cases on what the congressional purpose was behind 111. Jim said it wasn't just to criminalize assault but to protect other federal functions. Right. But that's not what Chapman said. Chapman said it's intended to protect officers from assault in the context of these other things. So 111 isn't exclusively protecting non-assaultive conduct. Now it's only protecting assaultive conduct. It just depends on the context in which the assault arises. So if it's not protecting those alternate functions, general intent isn't required necessarily to protect federal officers. There are a host of other regulations and federal statutes that can apply to individuals resisting arrest, not obeying federal orders or commands by figures in immigration, customs, border patrol, certainly other ways of charging the conduct that the court in Jim had originally held to be covered by 111. So Jim and Chapman interpreted the purpose in different ways. Let's say we agree with you on that. Does Chapman, though, address directly this general intent versus specific intent issue, or are you just saying we need to infer that based on Chapman's analysis? It doesn't address that because it wasn't raised. When my office argued Chapman, the simple question was whether or not an individual who stood and ignored commands to submit to arrest could be liable for a 111 violation. It was never an issue of intent, really because the argument was no assault ever occurred. So now we have the exact issue that is created. And the question that's been asked. So I'm clear because I found it a bit confusing. So Chapman's interpretation of 111, you're saying it undercuts the analysis that Jim undertook, but it's not directly inconsistent on the decision that Jim made as to whether 111 is a general intent or specific intent crime. It just undercuts Jim's reasoning. Am I understanding that correctly? Correct. It undercuts the entire basis in Jim for determining that 111 has to be a general intent crime. Absent these alternate congressional intentions beyond assault, which is what caused this court to believe a general intent mens rea was appropriate, Chapman completely obliterated that basis for it. So the only other legitimate analysis that exists in Jim is that of the elemental style approach. And there they said based on that approach, it has to be a specific intent offense given inclusion of the term willful. So I think it's implicit in Chapman that part of Jim's reasoning no longer is valid. And if it's no longer valid, it can't sustain the ultimate holding that 111 was a general intent crime. So the only remaining viable basis in Jim is the specific intent portion of the opinion. And you think that Chapman's undercutting the reasoning of Jim reaches our decision Miller began, that they're irreconcilable? Because that's the hard point for us. Absolutely, Your Honor. And funny you ask that because I was sitting out there going, I wonder if they're going to ask. This court's actually obliged under Atonio v. Wards Cove Packing Company, that's 810 F. 3rd, 1477, that's at page 54 of my opening brief, to follow the correct controlling decision in Chapman while calling for an en banc panel to remedy the division of authority. So either under Miller v. Gami or under Atonio, this court, I think, has to follow Chapman's reasoning that 111 requires an assault. And then I think you have to infer from what remains of Jim what the intent requirement would be for a violation of 111. Now, if the ‑‑ I'm sorry. Go ahead. I've asked too many questions. Go ahead. Look, if we said that the district court followed the second prong of assault, the reasonable fear apprehension prong, and I think perhaps misled by the model jury instruction saying there has to be a wound, if we say, well, the district court could have considered the first prong in this case, which seems to fit better, I think, an attempt to commit a battery or a willful attempt to commit a battery. We've defined it to inflict injury upon the person of another, I guess, is the language. How could we uphold the district court on that basis? Or why couldn't we uphold the district court on that basis? I therefore cannot uphold the district court on that basis at all. I believe it's page 96 of the excerpt of record in the second superseding indictment. Count 2 alleges assault with a deadly weapon and identifies Officer Lopez as the victim. And it specifically says it's relying on this display of force prong for the common law definition of assault. It never once alleges in the indictment anywhere an attempted battery. In fact, we had this lengthy discussion before the court in the record where the court poses this hypothetical, which the government included in its brief. What if someone doesn't hear or see what's going on? Does that mean the person gets off scot-free? And we argued, no, it's an attempted battery. And the court said no such thing exists, ironically. It was very odd, the reasoning that the district court had. Now, because it's not alleged in the indictment, what we would have here is a constructive amendment, which is per se error, doesn't require any finding of prejudice whatsoever, according to this court, as opposed to a variance. That would be a complete constructive amendment because now it alleges a whole new theory of prosecution. And at page 21 and 22 of the excerpt of the record, there had been a hearing in December of 2009 before the district court where the defense had asked for a bill of particulars. And the court said this is a very simple case. Let's just ask the government while they're here what their theory is. And the government said it's based on the display of force, and the court inquired what display of force, and the government said the rock throwing. And the district court went into additional detail. It said you're not going to rely on anything such as when they go to apprehend him, resisting, anything along those lines. And the government said no, not at all, Your Honor. But what they were consistent and steadfast in maintaining were two things. One, the theory of prosecution was based on a display of force, not an attempted battery. And I'll get to why I think that's the case in a moment. And they insisted that it was only the rock throwing. Now, the reason I don't think they wanted to or could allege the attempted battery was as follows. Mr. Acosta Sierra was severely mentally ill. He suffered from schizophrenia, paranoid delusions that he was being sought after by individuals from the government. It brought up the fourth issue that I presented to the court. He was convinced that he was being persecuted and individuals working for the government were trying to kill him. And this came not just from a defense expert, but it was actually the psychiatrist at the federal jail in San Diego. He had multiple competency examinations performed, and these were the findings by the BOP psychiatrist. So I don't think the government chose to go with the attempted battery because that would open the door to a diminished capacity defense in that all this mental health evidence could come in and potentially disrupt the government's ability to prove the specific intent to commit the battery. And we had a very strong defense, in my opinion, on that issue. So that perhaps is one of the reasons why the government chose not to do that. That leads to the question I wanted to ask. Is there anything unique about the case of individuals with serious mental disabilities such that a subjective standard of reasonableness should apply in the context of self-defense? Well, the proof is in the pudding when you look at this court's pattern jury instruction, I've said in my briefs. And this circuit specifically says that the defendant reasonably believed force was necessary to defend him or herself. That's what the jury instruction requires. The defendants approved subjectively they thought it reasonable. So my answer is yes. And I said it's in case law. Counsel, can I ask you a question on that? Absolutely. I wrote an opinion that was filed not too long ago in a case called Urena, U-R-E-N-A. And it addressed some common law self-defense doctrines. And one part of it took the position, I think held squarely, that where a prison inmate was an aggressor in an attack, that the inmate couldn't assert a self-defense theory. And in that context, the holding related to rejecting a claim that it was error not to give a self-defense instruction. But if an aggressor can't get a self-defense instruction, why wouldn't it also be true that an aggressor cannot get a testimony admitted to show they perceived the danger, as in the case of your top three argument? Well, I'm not too familiar with the facts of Urena, unfortunately. That'll probably be the first thing I do when I get out of the courtroom today, is check that out. But I'm guessing Urena may not have involved an individual who suffered from a mental illness. But I think that's the distinguishing factor here, and brings this case in line with the Tenth Circuit's decision in Simmons, where someone who was mentally ill in that case was permitted to put forward evidence of mental illness, specifically PTSD, that he suffered from, to explain why he had attacked some prison guards that came into his cell.  In Sanchez-Lima, 161 F. 3rd 545, which was a 1998 case by this Court, in that case, the Court agreed that it was subjectively viewed, that is, the reasonable belief that force had to be used to defend oneself. And in that case, an individual was being arrested by Border Patrol, and he believed that these were going to be robbers or bandits, because Border Patrol never identified themselves. And the Court agreed evidence regarding his subjective belief was admissible, and that's at page 549 of that opinion. So in Sanchez-Lima, it made pretty clear that subjective belief is important, and maybe distinguishing Urena from this case, we had a very solid foundation in the evidence to demonstrate why, subjectively, Mr. Acosta believed it was reasonable to use force to defend himself. You're over time. I saw that. Okay. We'll give you a minute to rebut. Thank you, Your Honor. Thanks. May it please the Court. Good morning. My name is James Melendrez. I'm here on behalf of the government. I'll address the arguments, not in the order that Mr. Sir initially brought them up, but in the order they were actually argued. So, first of all, starting with whether or not Section 111 remains a general intent crime. The government's position is that it's clear that it does. The Jim case and holding clearly set forth that in accordance with congressional policy, to provide maximum protection for federal officers and federal functions, as that was described in FIOLA, 111 is a general intent crime, that holding was repeated multiple times by the Ninth Circuit in Sanchez and then in two more recent cases. Now, with respect to the question of whether or not Chapman ---- Can I just ask, in that connection, the Jim case cited the Seventh Circuit case in the United States v. Staggs, but isn't that reference just dicta? Your Honor, with respect to the reasonable apprehension of bodily harm, I believe that that is where that reference comes into play, and I would agree that it is dicta. However, it was included in that opinion, and then it was repeated a second time, again, quoting and citing to you the Seventh Circuit case in Cantu-Sanchez, which was published two years later. And I'll stay on the reasonable apprehension of bodily harm and whether that's objective or a subjective standard. The government's position is that treating that as an objective, reasonable person standard, again, is consistent with the congressional policy to provide maximum protection not only to federal officers, which is important, but also to federal functions. And the reason is the following. If it's treated otherwise, if the appellant's argument is adopted and as reviewed in the first instance from the subjective perspective of the victim officer, there is a category of conduct that would be excluded, namely those assaultive incidents that occur where the victim officer does not perceive them. And that would lead to interference with federal functions and to potential harm to federal officers. An entire level of deterrence would be removed from the purpose of that statute. Can you go back to your explanation about why Chapman doesn't vitiate the reasoning in Jim as opposing counsel argues? Certainly. Turning back to whether or not Section 111 is a general intent or specific intent crime, in Chapman the question at the heart of the case was whether or not the appellant's conduct should be covered by Section 111. And in that case the appellant was standing in line at the port and was accused of cutting in line. And so the agents tried to move him out of line, ask him to move out of line. He wouldn't. And when they tried to forcibly remove him, he just tensed up. And this court found that that amounted to civil disobedience and then went through the analysis that the conduct that is covered by the misdemeanor portion of Section 111A1 must involve some type of assaultive conduct. Isn't that directly opposite to what Jim decided, that the reason the basis for saying it's general intent is because it does cover more than assault? That's the argument opposing counsel makes. Your Honor, I wouldn't think so. And I would start with this proposition. In Chapman, when the court read back into all the verbs that follow assault in 111A1, it started with the common law definition of assault that was included in United States v. Dupree. It has the two prongs, the willful attempt to injure or the threat that gives rise to apprehension of bodily harm. That definition in that case was the same definition in case that was addressed in Jim. And in Jim, in the context of the Section 111 case, this court found that although it said willful, it's still general intent. Therefore, when that definition is ported back into any of the following verbs in Section 111A1, it carries with it the definition applied to it in Jim of the general intent crime. So the government's position is that Chapman does not undermine Jim. In fact, in Chapman, there is language that states that it does not need to refer to the congressional history or purpose because from viewing the statute, the demarcation between misdemeanor conduct and felony conduct is clear. So Jim really, for its ultimate holding, relies on the congressional purpose to provide maximum protection to federal officers and to federal functions. In Chapman, there was no need to revisit that congressional history, that congressional purpose, because the question was clear to this court on the face of the statute. So the congressional history, you know, that was important to the court in Jim, you know, wasn't disturbed and wasn't reanalyzed in Chapman. So for that reason, the government's of the view that the general intent requirement remained intact post-Chapman. Okay, so on the first assault, on the first assault, the district court relied on the threat prong ultimately and explained why he thought there was a reasonable apprehension. And I had asked opposing counsel, well, what if we said the district court could have relied, if we think the district court burdened doing that, could have relied on the first prong? Could we have pulled it on that ground? And he said, you know, absolutely not. The government's theory never raised that. Is that, do you agree with that? No, I don't, Your Honor. And I don't believe that Mr. Sirr intentionally was misrepresenting the record. But on page 21 of the excerpts where I represented to the court initially what the government's theory was, there was no reference to a display of force. The reference was to the actual conduct, which was the throwing of the rocks. And, you know, that carries on to page 22. In the indictment itself, again, there is no reference to a display of force. You know, the indictment includes, it basically tracks the language of Section 111 and includes the verbs assault, oppose, impede, interfere, et cetera. So for that reason, it doesn't run, you know, were the court to uphold the district court's finding on the alternative basis, it wouldn't run contrary to the government's theory. It wouldn't raise an issue of variance or of constructive amendment. And I believe that, you know, the facts of the case certainly would support upholding the conviction. I mean, this is a case where the appellant walked in through the vehicle primary lanes and threw a jagged piece of concrete, you know, with all of his might at the head of Officer Lopez, missed it by a foot or two, had enough force that it carried seven or eight feet behind him. The officer was, you know, stunned, you know, initially confused, but within seconds redirected his attention to where the assault had originated from and identified the rock thrower as the appellant in this case. So, you know, the government's initial position is that the district court's application of, you know, the objective reasonable person with respect to the apprehension of immediate bodily harm was appropriate. But as a fallback matter, the suggestion offered by Your Honor would also be an appropriate resolution from the government's perspective. I missed the last part of your sentence. The fallback position of the government is that upholding the conviction on the alternative basis suggested by Judge Acuda would be an appropriate way to resolve the case at this level. Let me just ask you. If we adopt the objective standard of reasonableness, wouldn't it negate the right of people with serious mental disabilities to ever bring self-defense as an affirmative defense? With respect to, I believe we're talking about the fourth issue now, which is... Yes. So the government's answer to that is that there are other issues, particularly in the penological context that override that concern. In the case mentioned by Judge Gould, the Urena case, in the case cited in the government's brief, Gore, and in the Tenth Circuit case that was cited in Gore, there's a finding that when self-defense is measured in a prison context, it needs to be from an objective point of view. Because were it viewed from a subjective point of view, it would negatively impact the ability of the prison officials to maintain order. Because any time they shackle the prisoner, forcibly move the prisoner, they would be uncertain about what that prisoner's possibly disturbed state of mind would perceive that as and potentially lead to conflict within the prison. So the government's position on that as set forth in the brief is that it needs to remain an objective standard in terms of assessing self-defense. And in this case in particular, that's appropriate, because hopefully your honors were able to view the video that the government submitted. But in this case, there was nothing even approaching excessive force. The district court found there was no force applied at all. District Security Officer Barola pushed the button to open the door to the holding cell, and the appellant, in an apparent recognition that he was dealing with an authority figure, a law enforcement figure, turned around, backed around, put his hands behind his back, and then almost drew Officer Barola in. And at that point, whirled around and punched him twice on the head in his ear. And so for that reason, the facts of this case make clear that self-defense should not have been permitted as a defense. The district court was correct in excluding it. And because he appropriately excluded that defense, he also appropriately excluded any mental health evidence that the defense was interested in introducing to support that type of claim. Opposing counsel recites cases starting with Fiola and our other cases and suggests that we've indicated that it's the subjective belief that we look at for Section 111. In my review of the cases, I focus more on reasonably believed, which normally we think of as an objective belief. But can you clarify, are there cases saying that the subjective belief of the defendant is key for the Section 111 claim? With respect to the reasonable apprehension? Right. The government hasn't found any. And the cases that the appellant has cited to include United States v. Skeet, United States v. Dupree, United States v. Chavez, United States v. Rizzo, not a single one of those is a Section 111 case. Skeet, Dupree, and Chavez are all Section 113 cases. They involve assaults that occur either on Indian land or federal territory. And for that reason, the congressional purpose of providing heightened protection for federal officers and federal functions is not implicated. And that distinction is highlighted in the pattern instructions of the Ninth Circuit. If you compare, for example, the pattern instruction for Section 111, assault on a federal officer, it's clear that the measure of apprehension of bodily harm is to be done from an objective point of view, whereas for Section 113, the pattern instructions make clear that the perception is of the victim, him or herself. So Skeet, Dupree, and Chavez are all Section 113 cases. The other case that the appellant relies on is United States v. Rizzo. I believe mistakenly in his brief he indicated that was a Ninth Circuit case. It's actually a Seventh Circuit case, so it's not binding on the court. And number two, that is a case that involves Title 18, Section 2113, which is bank robbery of a federally insured institution. So again, the dual policies highlighted in FIOLA of heightened protection of federal officers and federal functions is not implicated. So I believe that had the appellant found a single case that stood for the proposition that Section 111 and the apprehension of bodily harm was to be measured from a subjective point of view, he would have included it. And the government, for its part, did not run across any case that stood for that proposition. And that's all I have, unless Your Honors have further questions. Thank you. Thank you. No questions there. Just two quick issues. First, with regard to whether this Court can uphold the conviction based on the attempt battery theory, I'm going to refer the Court to the U.S. v. Pazin case, P-A-Z-S-I-N-T, 703 F. 2nd, 420. That case explains that the constructive amendment of an indictment is per se error because it required prejudice. Your opposing counsel is saying that the indictment doesn't spill out a second prong and just refers to Section 111 in general terms. Do you disagree with that? I do. The second superseding indictment discussed the display of force. The words attempted battery don't appear in the second count. And that's no more evident than when the district court, at page 340 of my excerpt of record, makes clear we're dealing with the second prong of then, of the jury instruction, dealing with a 111 violation. He makes it very clear we're dealing with the second prong. It's also very clear because the government never once argued attempted battery is a theory of prosecution in trial. In its opening argument at 293 to 295, I'm sorry, in its closing from 314 to 319, it relies exclusively on the throwing of rocks to prove what it called the display of force. And never once in its opening did it make any arguments about any attempted battery. Throughout the case, even in response to the Rule 29, all it discusses is this display of force. So there were never any factual findings made by the district court in the case that would give this court a basis to conclude that that particular theory of prosecution was proven beyond a reasonable doubt. The other thing I want to mention is the government said that there's no cases talking about this actual fear requirement for a 111 offense. It identified the case Chavez, which unfortunately is an unpublished case, but I cited it. And what Chavez explains is, yes, actual fear is a necessary element of an assault. And it refers significantly to two cases, Skeet, which is the 113 case, but it also refers to Jim, which is a 111 case. So there is a case that cites to Jim for the proposition that actual fear is a necessary element, which makes sense because this court has adopted the common law definition of assault, all right, which requires that. And the only amendment to the common law definition of assault that's ever been done by any case in this circuit is in Jim, where it determines that general intent was appropriate. That was it. There's been no other change to the common law definition of assault by this circuit. Now, there won't be any diminution in the protection given the federal officer's feel. It makes clear that the knowledge of the officer isn't an element. It's a jurisdictional component. So there is no risk that officers will have any less protection than they already have at this point. Can you wrap up your overtime now? Yes, Your Honor. Regardless of whether the court uses the actual or the reasonable person standard, we should prevail in this case. But it's crucial to note that the government's reasonable person is an all-knowing, omniscient person, which is wrong. It has to be a person who knows exactly what the officer knows and has to judge whether it would have been reasonable for a person to fear harm. And this Court's decision in Dupree and in the Rizzo case made clear that where someone doesn't see or observe the display of force, the appropriate charge is an attempted battery. That's what the cases make clear, and that's what wasn't charged here. Thank you very much for your time, Your Honor. All right. The case of United States v. Acosta Sierra is submitted.
judges: Nelson, Gould, Ikuta